## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**BRANDON H. QUEEN,**

      **Plaintiff,**

                                   **Case No. 2:19-cv-2426**

      **v.**                             **Judge James L. Graham**

                                   **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

      Plaintiff, Brandon H. Queen, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11) ("SOE"), the Commissioner's Memorandum in Opposition (ECF No. 16) ("Opposition"), Plaintiff's Reply (ECF No. 17) ("Reply"), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

      Plaintiff began receiving SSI as a teenager based on his disability. (R. at 34, 97.) When he reached the age of eighteen, the Social Security Administration conducted a disability redetermination and concluded that Plaintiff did not meet the disability standard for adults. (R. at 81, 92–127.) Plaintiff appealed that decision and a hearing was held on November 21, 2013.

(R. at 119.) On December 19, 2013, the decision to cease Plaintiff's benefits was affirmed. (R. at 126–27.) Plaintiff requested a hearing before an administrative law judge. (R. at 130–37.) Administrative Law Judge Nino A. Sferrella held a hearing on July 14, 2015, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 54–91; 920-959.) On August 11, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 34–47; 985-1007.) On September 15, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–7; 913-919.) Plaintiff timely filed an action in this Court for review. On January 9, 2018, this Court remanded the case for further administrative proceedings, including additional consideration of Dr. Steiger's opinion and Plaintiff's RFC. (R. at 1009-1010; *see also Queen v. Comm'r Soc. Sec.*, Case No. 2:16-cv-1082, 2017 WL 6523296 (S.D. Ohio Dec. 21, 2017).

On remand, a hearing was held on January 17, 2019, before a new Administrative Law Judge, Noceeba Southern ("ALJ"), at which Plaintiff, who was again represented by counsel, testified. A vocational expert, Ja' Nitta Marbury, also testified. On February 8, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 893-912.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced this action.

## II.     HEARING TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff testified at the second administrative hearing that he was born on July 28, 1994, and was twenty-four years old at the time of the hearing. (R. at 963.) Plaintiff lives with his

mother.  (R. at 964.)  Plaintiff last worked from the end of July 2017 to the beginning of June 2018 as a night clerk at a gas station in his hometown.  (R. at 964-965.)  Plaintiff testified that he worked close to 40 hours but characterized this as part-time.  (R. at 964.)  Plaintiff left that job because he was laid off.  (R. at 965.)

 In response to questioning from his attorney, Plaintiff stated that he can only stand for four hours at one time and maybe five hours total in a day.  (R. at 966.)  Plaintiff explained that the condition of his legs has kept him from getting a driver's license and that he has been unable to acquire a car outfitted with hand controls.  (R. at 966-967.)  Plaintiff testified that he wears braces on both of his feet to stabilize him but they cause pain.  (R. at 967.)  He has declined surgery to insert a metal rod and fuse his bones together out of fear because his legs go numb and he cannot feel anything.  (R. at 967-968.)  The braces he wears last approximately one year to eighteen months but the shoes that fit over his braces wear out after three months.  (R. at 968.)  Plaintiff testified that he has trouble picking up his feet when walking because he cannot feel his legs.  (*Id*.)  In response to counsel's questions regarding additional pain in his legs, Plaintiff stated that when his legs go numb, it feels like he is "having a miniature stroke or something" and his legs start shaking.  (R. at 969.)  He explained that this happens "about a couple of times a day."  (*Id*.)

 With respect to his back issues, Plaintiff testified that he has been diagnosed with scoliosis and his doctor has advised not to lift above 50 pounds at most.  (R. at 970.)  Plaintiff described his back pain as an eight on a scale of one to ten but stated that he does not take medication for the pain.  (*Id*.)  When asked about his Taekwondo lessons, Plaintiff explained that he takes them for his heart and that he is a second-degree black belt.  (*Id*.)  He stated that he does

not ask for special treatment in his classes and when he has a problem he steps off to the side. (R. at 971.)

In response to questions from counsel relating to his college attendance, Plaintiff stated that he stopped attending in 2015 because he "couldn't get there." (R. at 971.) He described his progress as "okay" or "average." (*Id.*) With respect to accommodations, Plaintiff testified that he had access to a wheelchair if needed but that he chose not to use it. (Id.) He explained that he did not like to appear vulnerable and did not make his physical limitations a factor. (R. at 971-972.)

When counsel inquired as to his learning disorder, Plaintiff stated that Columbus State provided assistance and that his primary problem was with reading a lot and taking tests. (R. at 972.) Plaintiff also read a prepared statement indicating his frustration with having been considered disabled as a child but then "miraculously healed." (R. 972-974.)

In response to additional questioning from the ALJ, Plaintiff confirmed that he had no heart-related limitations and was not mentally disabled. (R. at 975.) Further, Plaintiff testified that he would be able to handle a job where he could sit most of the time but that he has had trouble finding such a job. (R. at 976-977.)

## B.     Vocational Expert Testimony

Ja' Nitta Marbury, Ph.D., testified as a vocational expert ("VE") at the January 17, 2019, administrative hearing. (R. at 978–983.) The ALJ initially proposed the following hypothetical:

> [A]n individual of the same age, education background, and work experience as the claimant, with the residual functioning capacity to perform sedentary work, except that this hypothetical individual should avoid foot controls with the bilateral lower extremities. This hypothetical individual should be able to tolerate occasional ramps or stairs and stooping. This hypothetical individual should avoid ladders, ropes, or scaffolds, kneeling, and crawling. This hypothetical individual should be able to tolerate frequent exposure to heat, cold, humidity, wetness, fumes, odors, dusts, and gases. This hypothetical individual should also avoid all hazards including moving machinery, heavy machinery, and hazardous machinery. This hypothetical individual

4

should perform best with a position that does not require fast-paced work or strict
production quotas. This hypothetical individual should also perform best with
a position with only occasional changes that are well-explained.

(R. at 980.)

The VE testified that the hypothetical individual could perform work as a final assembler,
table worker, and lens inserter, all of which were sedentary positions and all of which were
available nationally. (R. at 981.) The ALJ next asked the VE to presume the same individual as
before with the need for an additional ten-minute break during the workday. (*Id.*) The VE
testified that this additional ten-minute break would increase the time off-task at work and,
therefore, this individual would not be able to perform any job in the national economy. (*Id.*)
Finally, the ALJ asked the VE to presume the same individual in hypothetical number one but
this individual would be absent from work one to two days per month due to difficulties with
transportation. (*Id.*) The VE testified that one day per month would be the most such an
individual would be allowed to be absent and with two absences per month, the individual would
not be employable. (*Id.*)

In response to questions from Plaintiff's counsel regarding an addition to the hypothetical
that redirection to task every 30 minutes would be required, the VE testified that an employer
would have to make an accommodation and "that would not be standard employment tasks." (R.
at 983.) Further, the VE testified that a hypothetical individual's need to work at their own pace
or requirement of extended time to complete tasks, would be accommodations. (*Id.*)

### III.    RELEVANT MEDICAL RECORDS[1]

#### A.    Dory Sisson, Ph.D.

At the request of the Ohio Bureau of Vocational Rehabilitation ("BVR"), Dory Sisson, Ph.D., a psychologist, personally examined Plaintiff on April 15, 2013.  (R. at 526–35.)  Dr. Sisson noted that Plaintiff generally denied any current psychological/psychiatric complaints and denied having ever been diagnosed with, or experiencing "significant symptoms" from, attention deficit hyperactivity disorder, depression, anxiety, or bipolar disorder.  (R. at 527.)   Plaintiff denied having crying spells, homicidal ideation, suicidal ideation, or any past suicide attempts. (*Id*.)  Plaintiff also denied explosive outbursts.  (*Id*.)  He reported yelling and anger towards his brother, but Plaintiff is able to calm himself and denied hitting his brother.  (*Id*.)  When questioned about anxiety symptoms, Plaintiff reported that he felt nervous about competitive basketball, but denied excessive worry, panic attacks, or any other nervousness or anxiety.  (*Id*.) Plaintiff denied any past medication for psychological or psychiatric conditions or issues and denied any history of family mental illness.  (R. at 528.)  Dr. Sisson noted that Plaintiff was not currently receiving psychological or psychiatric treatment.  (*Id*.)

As to Plaintiff's educational history, Dr. Sisson noted that Plaintiff, presently a senior in high school, has an Individualized Education Program ("IEP").  (*Id*.)  When asked about learning disabilities are addressed by his IEP, Plaintiff reported the following:  "I don't know what LD [learning disability].  When the teacher says something, I can't learn it."  (*Id*.)  Plaintiff reported that he has a "big anger problem," but he can control it.  (*Id*.)  Plaintiff denied any behavioral difficulties at school, such as detentions.  (R. at 528–29.)

---

[1] The Court previously detailed Plaintiff's medical records from Drs. Sisson, Swain and Steiger.  These records have not been updated. For ease of reference, the Court reiterates its previous discussion of these records here.

Plaintiff reported that he worked a paying job during lunch at his high school. (R. at 529.) He denied having any problems at work and denied interpersonal difficulties, stating that he gets along with people. (*Id*.) When asked about psychological or emotional difficulties at work, Plaintiff stated, "No, I have good control of my anger." (*Id*.) When asked about any cognitive difficulties he has or would have at work, Plaintiff responded that "I wouldn't be able to read or write at a job." (*Id*.) Plaintiff reported that he could keep a job and that the only thing he needs help with is driving. (R. at 533.)

Plaintiff reported that he eats breakfast and watches television before going to school. (R. at 529.) After returning from school, he relaxes and watches television. (*Id*.) Plaintiff socializes with friends and relatives. (*Id*.) Plaintiff attends church weekly, plays basketball twice a week, and does housework every day. (R. at 530.) Plaintiff bathes and changes his clothes daily and eats three meals a day, but does not cook. (*Id*.) He does not have a driver's license. (*Id*.)

Dr. Sisson reported that Plaintiff maintained appropriate eye contact and that his social presentation was within normal range. (*Id*.) While Dr. Sisson noted that Plaintiff is "an adequate historian/reporter," he reported that Plaintiff is "somewhat inconsistent in his report related to psychological symptoms (*e.g.*, references an anger problem but denies any symptoms; this is likely age-related)." (*Id*.) Dr. Sisson further noted that Plaintiff had normal syntax and vocabulary usage/recognition and does not need simplification of information. (*Id*.) At the examination, Plaintiff was oriented times three and coherent with no unusual or tangential/circumstantial thinking. (R. at 531.) Plaintiff's associations were normal. (*Id*.) Plaintiff reported he is a "little off on the educational side. Other stuff, fine. I can memorize plays." (*Id*.) Plaintiff denied and does not demonstrate any of the following: auditory or visual

hallucinatory involvement, paranoid ideation, psychosis, fears or phobias, post traumatic revivification experiences, nightmares, or obsessive compulsive behaviors.  (*Id*.)  Dr. Sisson reported that Plaintiff's insight and judgment are fair.  (*Id*.)

Dr. Sisson administered a Weschler Adult Intelligence Scale – Fourth Edition test ("WAIS-IV") (R. at 526, 531–35.)  Plaintiff earned an overall IQ the low average range (full-scale intelligence quotient ("FSIQ") of 85) and reflected mild impairment overall.  (R. at 532.)  Dr. Sisson, however, noted that Plaintiff's composite scores ranged from low to average, indicating that FSIQ is not a good summary measure of Plaintiff's intellectual skills.  (*Id*.)  Plaintiff's verbal skills and non-verbal/perceptual reasoning skills were both average.  (*Id*.)  Plaintiff's short-term attention/ working memory skills were in the low range, indicating moderate impairment, while his processing speed was low average, indicating mild impairment.  (*Id*.)

Dr. Sisson also administered a Wide Range Achievement Test IV ("WRAT-IV") to assess Plaintiff's skills in reading, spelling, and math.  (R. at 532–33.)  Plaintiff's reading skills, sentence comprehension, and spelling skills were in the low average, indicating mild impairment.  (R. at 533.)  His math skills were in the low range, indicating moderate impairment.  (*Id*.)

Dr. Sisson diagnosed Plaintiff with a learning disorder not otherwise specified ("NOS").  (*Id*.)  Dr. Sisson noted Plaintiff's scores in the WAIS-IV and WRAT-IV and noted that Plaintiff's school records "special education services in all core academic areas."  (R. at 533–34.)  Dr. Sisson based her diagnosis of a learning disorder NOS "on academic testing below average, and below intellectual expectations."  (R. at 534.)

Dr. Sisson rendered no diagnosis regarding Plaintiff's emotional symptoms. (*Id*.) Dr. Sisson reported no overt evidence of depression or anxiety. (*Id*.) Dr. Sisson noted that Plaintiff's vocational interests of janitorial work and culinary arts appear viable. (*Id*.) Dr. Sisson reported that Plaintiff would be able to manage moderate work stress, but that "under high levels of stress he may demonstrate a relapse of his reported anger difficulties." (R. at 534–35.) Dr. Sisson opined that Plaintiff would be able to complete both verbal and nonverbal tasks at an average level with no impairment expected; Plaintiff's work speed would be mildly impaired and that he would benefit from extended time to complete tasks or be allowed to work at his own pace. (R. at 535.) Because Plaintiff's short-term attention/working memory was moderately impaired, Dr. Sisson further opined that Plaintiff would be expected to maintain attention and concentration on a time-limited basis only and would need repetition of information, an environment with minimal distractions, redirection to task, and allowance for breaks to refocus. (*Id*.)

## B.    Jennifer Swain, Psy.D.

On May 30, 2013, Jennifer Swain, Psy.D., a state-agency psychologist, reviewed Plaintiff's medical record. (R. at 551–68.) Dr. Swain indicated that Plaintiff suffered from moderate limitations in activities of daily living and in maintaining concentration, persistence, and pace. (R. at 561.) She also indicated that Plaintiff was mildly impaired in maintaining social functioning and had no episodes of decompensation. (R. at 561.) In her functional capacity assessment, Dr. Swain reported that Plaintiff, a senior in high school at the time of the evaluation, spends time with friends and enjoys being the varsity basketball manager. (R. at 619.) While Plaintiff's reading, writing, and math skills are at a twelfth-grade level, Dr. Swain indicated that Plaintiff's problem-solving skills, communication skills, independent living skills,

and employability skills are at "grade level." (*Id.*) Dr. Swain indicated that Plaintiff was an "adequate historian" but was "somewhat inconsistent reporting his symptoms." (*Id.*) Based on this and other findings from Dr. Sisson's examination, Dr. Swain went on to find as follows:

> Dr. Sisson is given partial weight as the claimant has worked in the lunchroom without difficulty. He is involved in sports. He can complete simple tasks. He reports that his concentration is improving. He reports he can memorize plays. He is a hard worker per school records. The statements made by the claimant are considered partially credible as he reports that he has an anger issue. The records show no difficulty with anger and he reports getting along with others.

> He should be able to work with normal work hours and normal breaks. He should be capable of understanding, remembering, and completing simple 1–2 step work tasks independently once learned. He may not be capable of reading complex instructions. He should be capable of relating to others on a superficial basis. He should be capable of handling the stress of routine work.

(*Id.*)

## C.    Karen Steiger, Ph.D.

Karen Steiger, Ph.D., a state-agency psychologist, reviewed Plaintiff's medical record. (R. at 577–94.) Dr. Steiger found that Plaintiff was moderately limited in his ability to understand and remember and carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances, and in his ability to respond appropriately to changes in the work setting. (R. at 577–78.) Dr. Steiger also found that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures, ability to understand and remember and carry out very short and simple instructions, ability to sustain an ordinary routine without special supervision, ability to work in coordination with or in proximity to others without being distracted by them, and the ability to make simple work-related decisions. (*Id.*) She further found no evidence of any limitation in his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms

and to perform at a consistent pace without an unreasonable number and length of rest periods.
(R. at 578.)  Dr. Steiger noted that Plaintiff was an "adequate historian though somewhat
inconsistent in his sx [symptoms] report."  (R. at 579.)  Based on the record, Dr. Steiger
concluded that Plaintiff was "partially credible as testing shows math and reading skills would
not prevent him from working."  (*Id*.)  She found that the record did not demonstrate that
Plaintiff had a current anger problem or that he would need significant redirection to task.  (*Id*.)
She further concluded as follows:

> On the Function Form, there is no indication of problems with memory or
> completing tasks, concentration or getting along with others.  He reports working
> in school.  His duties are to clean up; however, there is no indication by him or his
> mother that he needs extra supervision. The claimant is capable of interacting with
> others in a work setting.  He is capable of understanding, remembering, and
> following simple work instructions, 1–3 step instructions.  He may not be capable
> of doing work that requires complex reading skills or more than simple math skills.
> He is capable of handling the stress of work within his ability level, given his LD
> [learning disability] diagnosis.  He would be capable of sustaining concentration
> and attention for work tasks that do not require frequent and unexplained changes
> in job duties.

(*Id*.)

**D. John S. Reece, Psy.D.**

John S. Reece, Psy.D. a consultative psychologist, examined Plaintiff on September 25,
2018.  (R. at1328-1335.)   In evaluating Plaintiff's cognitive functioning, Dr. Reece reported that
Plaintiff was alert, clear and not confused and was oriented to person, place, situation and time.
(R. at 1330.)   He assessed Plaintiff's short-term memory as good and his working memory as
fair to good, as assessed by the Digit Span subtest of the WAIS-IV. (*Id*.)  According to Dr.
Reece, Plaintiff's word knowledge and verbal concept skills were fair to good, as assessed by the
Similarities subtest of the WAIS-IV. (*Id.*)  Dr. Reece found Plaintiff's ability to perform mental

computation to be fair as assessed by the Arithmetic subtest of the WAIS-IV. (*Id.*) His social insight was good and his persistence on task and pace of problem solving were satisfactory. (*Id.*)

Dr. Reece assessed Plaintiff as functioning intellectually in the low average range. (R. at 1330.) He noted that Plaintiff failed to cite any mental problems as a reason for his inability to work. (*Id.*) He concluded that Plaintiff was able to manage his own funds. (R. at 1331.)

In his functional assessment, Dr. Reece explained that Plaintiff was able to follow directions in the exam and reported no problems in past work situations; that Plaintiff demonstrated satisfactory concentration in testing and was attentive to test tasks without distractibility. (R. at 1331.)

## IV. ADMINISTRATIVE DECISION

On February 5, 2019, the ALJ issued his decision. (R. at 890–912.) Step one of the sequential evaluation process[2] was not used in redetermining disability at age 18 (20 C.F.R. § 416.987(b)). (R. at 35.) At step two, the ALJ concluded that, since January 29, 2013, Plaintiff

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

had the following severe impairments:  scoliosis, anthrogryposis with bilateral extreme pes

valgus foot deformities, status-post remote tendon surgery and subtalar fusion, coarctation and

ventricular septal heart defect, and a learning disorder.  (R. at 895.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 896.)  At step four,

the ALJ assessed Plaintiff's mental RFC as follows:

> Mentally, the claimant can perform best in positions that do not require fast-paced
> work or strict production quotas and only occasional changes that are well
> explained.

(R. at 897.)

In reaching this determination, the ALJ assigned "some weight," to the opinion of Dory

Sisson, Ph.D. an independent psychological consultative examiner.  (R. at 901.)  The ALJ

explained that, although she examined Plaintiff "on a one-on-one basis and had the opportunity to

personally interview, observe, and objectively evaluate" him, her opinion was "only partially

consistent with the evidence of record."  (*Id.*)  The ALJ further reasoned as follows:

> While she indicated that the claimant would benefit from extended time and or be
> allowed to work at his own pace, a limitation to positions that do not require fast-paced
> work or strict production quotas would adequately accommodate any issues he may
> experience maintaining pace. Furthermore, there is no indication from the claimant's
> work history at school or at the gas station that he required redirection to task or breaks
> to refocus. Lastly, the mental residual functional capacity assessed herein would only
> allow for unskilled work, thus any accommodations for more complex math is
> not necessary. Therefore, Dr. Sisson's opinion is given some weight.

(*Id.*)

The ALJ accorded "some weight" to the mental assessments of Drs. Steiger and Swain,

the State agency psychological consultants' stating that, despite their program familiarity and

13

longitudinal view of the medical evidence of record, their opinions were only partially consistent with the evidence.  (R. at 901.)  The ALJ further reasoned as follows:

> Their indication that the claimant is limited to simple tasks is not supported by the evidence demonstrating low average IQ scores (See, e.g. Exhibit 33F, p. 3). The claimant should be able to tolerate a number of work tasks as long as there are only occasional changes that are well explained. The record also does not document that the claimant has any social limitations, as he has worked previously without any apparent interpersonal issues and has participated in karate without any problems with others. Therefore, the State agency mental assessments are given some weight.

Relying on the VE's testimony, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy.  (R. at 902–903.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 903.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746

(6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff advances one contention of error. Plaintiff asserts that the ALJ erred by not

incorporating relevant mental limitations in the RFC determination, resulting in a deficient RFC

that does not adequately address Plaintiff's limitations. In so arguing, Plaintiff contends that the

ALJ failed to properly evaluate the mental health opinion evidence of record, including

specifically the opinions of Drs. Sisson, Steiger, and Swain.

**A. ALJ's Evaluation of the Mental Health Opinions**

In evaluating a claimant's case, the ALJ must consider all medical opinions that she

receives. 20 C.F.R. § 416.927(c). Medical opinions include any "statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature and

severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §

416.927(a)(2).  Here, Dr. Sisson is a nontreating sources.  *See Smith v. Comm'r of Social Sec.*,

482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined

the [plaintiff] 'but does not have, or did not have, an ongoing treatment relationship with' her.")
(citing 20 C.F.R. § 404.1502.)  Although an examining source's opinion is generally is entitled to
greater weight than the opinion of a non-examining source, 20 C.F.R. § 416.927(c)(1), an ALJ
may reject an opinion if it is inconsistent with the record evidence.  20 C.F.R. § 416.927(c)(4);
*Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010).  Drs. Swain and Steiger, on
the other hand, are state agency consultants.  An ALJ "must explain in the decision the weight
given the opinions of a State Agency medical ... consultant[,]" 20 C.F.R. § 404.2527(e)(2)(ii),
but need not give "an exhaustive factor-by-factor analysis" of his decision. *Cf. Francis v.
Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citations omitted).

Finally, the Commissioner reserves the power to decide certain issues, such as a
claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider
opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on
issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R.
§ 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff argues that the ALJ's evaluation of these opinions is not supported by
substantial evidence.  Specifically, Plaintiff contends that these opinions included similar and
unrefuted limitations.   Further, Plaintiff asserts that the ALJ offered only cursory reasons for
discounting certain limitations.  The Court disagrees.

As an initial matter, both Drs. Swain and Steiger found Dr. Sisson's opinion was entitled
to only partial weight, recognizing distinctions with respect to stress and anger issues.  (R. at
567, 579.)  Consequently, there were differing interpretations of the extent of these limitations in
the record.  (*Id*.)  Further, it is an overstatement to characterize the opinions as unrefuted.  Dr.
Reece's more recent consultative examination assessed no functional limitations.  Although the

ALJ ultimately accorded Dr. Reese's opinion little weight, it does provide a different perspective as to Plaintiff's limitations. (R. at 1330) (e.g., "[t]he claimant is assessed as functioning intellectually in the low average range. Therefore, no diagnosis is made. Mental effects on the claimant's work history/behavior are none. [Plaintiff] did not cite any mental problems as a reason for his inability to work.")  "If substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Moreover, the ALJ's assessment of the opinion evidence is supported by substantial evidence.  (R. at 900-901.)  He appropriately discounted these opinions because they were inconsistent with the record evidence.  *See* 20 C.F.R. § 404.1527(c)(4) (providing that "the more consistent a medical opinion is with the record as a whole, the more weight" it is given).  The ALJ's discussion in support of his analysis is lengthy and detailed and cannot be described as cursory.  Substantial evidence supports the conclusion that these opinions were inconsistent with the record as a whole.  For example, as the ALJ noted, although Plaintiff was diagnosed with a learning disorder (R. at 533), had an individualized education plan (IEP) and was in special education classes for learning issues while in school (R. at 385-450), by his senior year, he was in regular education classes with accommodations.  (R. at 386.)  Further, Plaintiff was noted to be at grade level in academic abilities, cognitive abilities, and functional abilities and successfully graduated from high school (R. at 544.)  Additionally, Plaintiff's intelligence testing on more than one occasion resulted in full-scale IQ scores in the low average range.  (R. at 532, 1332.)

The ALJ reasonably considered Plaintiff's own testimony regarding his restrictions as well as his activities of daily living and substantial evidence supports his conclusions.  For instance, Plaintiff testified that he worked at a gas station approximately 40 hours a week for nearly a year between July 2017 and June 2018 and left that job because he was laid off, not because he was impaired.  (R. at 964-965.)  Plaintiff further testified that he had attended college and done "okay" or "average" but stopped attending because he had no way to get there, again, not because his limitations. (R. at 971.)  The ALJ's discussion that Plaintiff is able to perform his personal care independently, do household chores, prepare meals, go shopping, and count change is supported by the record.  (R. 228-235; 1329.)  Plaintiff's testimony and his level of functioning with daily activities supports the ALJ's determination to afford these opinions less weight.  In sum, substantial evidence supports the ALJ's detailed reasons for discounting portions of these opinions. *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 690 (6th Cir. 2007) ("The ALJ did not summarily dismiss [the doctor's] opinion. Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence. This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement.").

The undersigned finds that substantial evidence supports the ALJ's assessments of the opinions of Drs. Sisson, Swain, and Steiger.  The Court must defer to that finding even if there is substantial evidence supporting an opposite conclusion. *Blakley*, 581 F.3d at 406; *cf. Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) ("The ALJ retains a 'zone of choice' in deciding whether to credit conflicting evidence."). For these reasons, the undersigned finds that the ALJ did not err in his consideration of these opinions.

**B. RFC**

Plaintiff also contends that the ALJ's improper evaluation of the opinion evidence

18

was more than harmless error because it resulted in an inaccurate RFC. (ECF No. 11 at 10-11.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted)

Plaintiff argues that the ALJ failed to explain why the mental RFC omitted any reference to his ability to handle stress. This argument lacks merit. First, as the ALJ discussed, on his Adult

Function Report, Plaintiff specifically stated that he does not have problems handling stress. (R. at 897; R. at 234.) Further, as the ALJ noted, Plaintiff described himself as able to handle changes in routine. (*Id.*). Additionally, the ALJ pointed out that Plaintiff self- reported to Dr. Reece that he would breathe and keep working when dealing with workplace stress. (R. at 897; R. at 1329.) Beyond this, both Drs. Steiger and Swain opined that Plaintiff would be capable of handling the stress of work. (R. at 567, 579.) Accordingly, substantial evidence supports the ALJ's decision to omit stress as a factor in the RFC.

Plaintiff also asserts that the ALJ's mental RFC failed to include any limitation regarding his ability to maintain attention and concentration. Plaintiff argues that Dr. Swain opined that he would be limited to 1-2 step tasks; Dr. Steiger limited him to 1-3 step tasks; and Dr. Sisson concluded that he had an impaired attention and working memory and would need information repeated, minimal distractions, and redirection to tasks with breaks to regain focus. Further, Plaintiff asserts that even the ALJ found that he had moderate limitations in concentration, persistence, and pace.

First, the fact that the ALJ did not incorporate all of the restrictions noted by Drs. Swain and Steiger is not legal error in and of itself. *See White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (noting that the ALJ's decision not to incorporate all of the State agency examining physician's restrictions, despite attributing significant weight to his opinion, was "not legal error in and of itself"). "While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). Indeed, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant

weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio

March 19, 2013) (citing *Ford*, 114 F. App'x at 198.)

   Similarly, the ALJ was not required to include any such restrictions noted by Dr. Sisson.

An ALJ simply is not required to include restrictions in the RFC that the ALJ did not accept. *See*

*Hall v. Comm'r of Soc. Sec.*, No. 1:17-CV-363, 2018 WL 3524467, at *4 (S.D. Ohio July 23,

2018), *report and recommendation adopted*, No. 1:17-CV-363, 2018 WL 4031060 (S.D. Ohio

Aug. 23, 2018) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993)).

   To the extent the ALJ concluded that Plaintiff exhibits moderate difficulties in

concentration, persistence and pace, "[c]ase law in this Circuit does not support a rule that a

hypothetical providing for simple, unskilled work is per se insufficient to convey moderate

limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x

625, 635 (6th Cir. 2016).  Here, as the ALJ recognized, the mental RFC formulated by the ALJ

was consistent with unskilled work.  (R. at 901 "the mental residual functional capacity assessed

herein would only allow for unskilled work….")  In response to the ALJ's hypothetical, the VE

identified three jobs that Plaintiff could perform – final assembler, table worker, and lens

inserter.  (R. 903, 981.)  The VE described all three of these jobs as sedentary with a Specific

Vocational Preparation (SVP) of 2.  (R. at 981.)  An SVP of 2 is consistent with unskilled work.

("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds

to an SVP of 1-2.  *Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert &*

*Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*,

SSR 00-4P (S.S.A. Dec. 4, 2000)).  Further, "[t]he Social Security Administration regulations

define unskilled work as "work which needs little or no judgment to do simple duties that can be

learned on the job in a short period of time … in other words, simple, repetitive tasks. 20 C.F.R.

§ 404.1568(a)."  *Allison v. Apfel*, 229 F.3d 1150, 2000 WL 1276950 at *4 (6th Cir. August 30,

2000).

Moreover, Plaintiff fails to demonstrate how the RFC's restriction to jobs that are not

fast-paced and that do not require strict production quotas do not adequately account for

moderate limitations in concentration, persistence or pace.  Plaintiff's reliance on *Ealy* v.

*Comm'r.*, 594 F.3d 504, 517 (6th Cir. 2010) is unpersuasive.  In *Ealy,* the ALJ omitted speed and

pace-based restrictions altogether from the hypothetical.  *Ealy,* 594 F.3d at 516. (ALJ's

streamlined hypothetical omitted speed- and pace-based restrictions completely).  Here, the ALJ

went beyond the "streamlined" limitations of *Ealy*.

In short, the ALJ's mental RFC determination accounted for Plaintiff's mental

limitations.  While Plaintiff may have preferred a different RFC than the one determined by the

ALJ, the ALJ thoroughly explained the bases for his determination, which enjoys substantial

support in the record. *Schmiedebusch*, 536 F. App'x 637, 649 (6th Cir. 2013) ; *Felisky v. Bowen*,

35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is

a 'zone of choice' within which the Secretary may proceed without interference from the courts.

If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that

substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is

therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and

**AFFIRM** the Commissioner's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  July 22, 2020                                  *s/ Elizabeth A. Preston Deavers*
                                                     ELIZABETH A. PRESTON DEAVERS
                                                     CHIEF UNITED STATES MAGISTRATE JUDGE